# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JANETT K. CLARK,           )
          )
      **Plaintiff,**      )
          )
**v.**               )    **Case No. CIV-18-340-SPS**
          )
**COMMISSIONER of the Social**  )
**Security Administration,**     )
          )
      **Defendant.**    )

## OPINION AND ORDER

The claimant Janett Kay Clark requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 41). She completed the eighth grade and has no qualifying past relevant work (Tr. 28, 210). The claimant alleges that she has been unable to work since March 23, 2016, due to head trauma, brain damage, PTSD, bipolar disorder, depression, seizures, and short-term memory loss (Tr. 209).

## Procedural History

On March 23, 2016, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 13, 2017 (Tr. 20-30). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1581.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she could only frequently reach, handle, and finger; occasionally climb ramps/stairs, balance, stoop, crouch, and crawl; and never climb ramps/stairs. Additionally, he found she must avoid exposure to fumes, odors, dusts, gases, poor ventilation, unprotected heights, unprotected/hazardous moving machinery, and

operating a motor vehicle. Finally, he limited her to simple, routine, repetitive tasks but not at production rate and pace, along with frequent interaction with supervisors and coworkers, occasional interaction with the general public, and tolerance of few changes in the routine work setting (Tr. 24). The ALJ then concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work that she could perform, *e. g.*, document preparer, touch up screener, and addresser (Tr. 28-29).

## Review

The claimant contends that the ALJ erred by: (i) failing to identify jobs she could perform in light of the assigned RFC, and (ii) by failing to properly evaluate her subjective statements. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of epilepsy, anxiety disorders, and affective disorders (Tr. 22). The medical evidence relevant to this appeal reflects that the claimant was injured on March 23, 2008 by an assault for which she had documented skull fractures, underlying injuries, and needed surgical interventions. She was in a coma and placed on a ventilator but was able to be weaned from the ventilator and improved her functionality (Tr. 436-1592). Her final diagnoses upon discharge on April 22, 2008, were right temporoparietal depressed skull fracture with underlying bleeding and edema, coma, and respiratory failure (Tr. 436). She was discharged to follow up with neurosurgery (Tr. 436).

The claimant presented to the emergency room several times beginning on July 13, 2014 through June 16, 2015, reporting that she had been seizure free but needed medication refills (Tr. 305-317, 1602-1643). Treatment records from the Health and Wellness Clinic where the claimant received her primary care reveal a diagnosis of, *inter alia*, epilepsy and recurrent seizures and anxiety, but records reflect only a report of one seizure in August 2016 (Tr. 358-404, 387).

Mental health treatment records reflect diagnoses of depression NOS and anxiety NOS, and further note her seizure disorder, which was attributed to the 2008 assault (Tr. 418).

At the administrative hearing, the claimant testified that she struggles to be around people and has a seizure disorder, with about six seizures in the past month (Tr. 48). She estimated having two to four seizures per month, which take her a day or two to regain her functioning (Tr. 64). She also testified that PTSD, bi-polar disorder, and severe migraines from a head injury prevented her from working, noting that she has panic attacks around people and that she has migraines "[e]very other day, just about" (Tr. 49). She stated that she used methamphetamine and marijuana about sixteen years prior to the hearing, then later stated that she had been clean eight years (Tr. 52, 64). She indicated she had no limitations on walking and could lift ten pounds (Tr. 53). She testified that a cyst on her right hand affected her ability to pick things up, that she has nerve damage in her right foot preventing her from putting all her weight on it sometimes, and that she struggles to focus (Tr. 54-55). She further testified that she can bend over but gets dizziness and vertigo when trying to stand back up (Tr. 61). As to her memory, she testified that she has to check a

calendar every day, but that she also keeps sticky notes around her house, including five to help her do laundry (Tr. 62-63). When asked about the 2008 assault, the claimant stated that she associated all her present problems with it (Tr. 60).

The ALJ also elicited testimony from a vocational expert ("VE") to determine if there were jobs the claimant could perform with her limitations (Tr. 70-75). The ALJ posited, *inter alia*, a hypothetical in which an individual with the age, education, and work history of the claimant would have the RFC to perform "sedentary exertional level" with only "occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, crouching, or crawling; frequently reaching, handling, or fingering; avoiding exposure to fumes, odors, dust, gases, poor ventilation; avoided unprotected heights, unprotected hazardous moving machinery, and operating a motor vehicle" (Tr. 71-72). Additionally, the ALJ asked about a claimant with all the above-stated limitations who also could "perform simple, routine, and repetitive tasks not at production-rate pace; frequent interaction with supervisors, coworkers; occasional interaction with the general public; can tolerate few changes in routine work setting" (Tr. 72). The VE indicated that the claimant could not perform any of her past work but identified three sedentary jobs such a person could perform: (i) document preparer, DICOT § 249.587-018; (ii) touch-up screener, DICOT § 726.684-110; and (iii) addresser, DICOT § 209.587-010 (Tr. 72-73). The ALJ did not ask, and the VE did not discuss, whether the VE's testimony was consistent with the Dictionary of Occupational Title ("DOT").

In his written decision, the ALJ summarized the claimant's hearing testimony and much of the medical evidence in the record. The ALJ noted that much of the evidence in

the record (over 1,000 pages) related to her 2008 assault (Tr. 25). After summarizing statements by the claimant and her son, the ALJ found that the statements did not support her allegations of a diagnosis of epilepsy or a seizure disorder in her 2008 discharge notes, and that her statements to other treatment providers that she had been in a coma for over four months and seven months was inconsistent with the record that she was hospitalized for one month (Tr. 26). Likewise, he noted medical records that the claimant rarely had a seizure when she was on medication, and that exacerbation of symptoms largely coincided with the claimant running out of her medications (Tr. 26-27). He further noted that her reported functional limitations were inconsistent with objective examinations, and that she was actually able to move with her daughter to help care for three grandchildren (Tr. 27). As to her physical limitations, the ALJ gave substantial weight to the environmental limitations, but further limited her to sedentary work in light of her reported foot pain, hand pain, and difficulty bending (Tr. 27-28). He afforded substantial weight to the mental RFC assessment done by the state reviewing physicians (Tr. 28). The ALJ then determined that the claimant's RFC included the limitations from the hypothetical to the VE that was described above (Tr. 24). He thus adopted the VE's testimony that the claimant could perform the sedentary jobs of document preparer, touch-up screener, and addresser (Tr. 29). Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 30).

First, the claimant asserts that the ALJ erred in identifying jobs she could perform, because there was a conflict between the information provided and the Dictionary of Occupational Titles ("DOT"). Under Social Security Ruling 00-4p, "When vocational

evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].  Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict with regard to the reasoning levels of each of the jobs identified.  *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The first job, document preparer, has a reasoning level of 3, *see* DICOT § 249.587-018.  A reasoning level of 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."  *See* DICOT § 249.587-018.  The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job.  *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted].  As to this job, the Court agrees that there is a conflict here which the ALJ failed to identify.  *Hackett v. Barnhart,*

395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work tasks" is "inconsistent with the demands of level-three reasoning.").

The remaining two jobs, touch-up screener and addresser, however, have reasoning levels of 2. *See* DICOT §§ 726.684-110, 209.587-010. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 726.684-110, 209.587-010. The claimant asserts that this reasoning level is likewise incompatible with simple work. The undersigned Magistrate Judge agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion. *See Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

The Court thus finds that the identification of the document preparer job is harmless error, because there are still jobs identified that do not pose a conflict. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform).

Next, the claimant contends that the ALJ erred in assessing her subjective statements for consistency because the ALJ made no specific findings and failed to properly account for her impairments, despite the medical evidence showing a nexus between her impairments and her subjective allegations. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the

---

[2]  SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.*  at *2.

[3]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in

symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the undersigned Magistrate Judge notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 30). In making such a conclusion, however, the ALJ noted several inconsistencies between the claimant's subjective

---

16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

statements of pain and the evidence of record, including: (i) the discrepancies between her testimony as to the length of her 2008 hospitalization and the record of it, (ii) the lack of seizure diagnosis upon discharge in 2008, (iii) her testimony regarding the frequency of seizures did not match the record where she reported being largely seizure free on her medication, and (iv) her reported limitations contrasted with statements that she moved to help take care of three grandchildren. Thus, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

### Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 5th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**